UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WENDALL HALL,

    Plaintiff,

v.                                  Case No.:  2:23-cv-105-SPC-KCD

MELINDA MASTERS, JON
CARNER, ROBERT HOUSTON,
and COURTNEY JONES,

    Defendants.
_____/

### ORDER

Before the Court is Defendants' Motion for Summary Judgment (Doc. 59).

### Background

Plaintiff Wendall Hall is an involuntarily committed resident of the Florida Civil Commitment Center (FCCC) because a Florida court deemed him a sexually violent predator. He filed this action against four FCCC officials, alleging they unlawfully punished him with an excessively long period of seclusion, failed to give him copies of disciplinary reports, retaliated against him for filing lawsuits, and denied him access to legal materials.

In the Statement of Material Facts section of their Motion, the defendants recount the circumstances relevant to Hall's claims, and they

support those facts with pinpoint cites to attached affidavits, FCCC disciplinary records, the FCCC resident handbook, and facility operating procedures. Hall admits to the first eleven facts, which summarize allegations in his Complaint, but he responds to each other fact the same way: "DENIED EXHIBITS, A,B,C,D,E,F,G."[1] Those exhibits do not contradict the defendants' statements. In fact, some of Hall's exhibits are duplicates of FCCC records cited in the defendants' Motion.

Hall's lazy and superficial denials do not establish a genuine issue of material fact. *See Scheduling Order* (Doc. 47 at 3) ("Each denial must set forth **pinpoint** citation to the records where the fact is disputed…**any fact that the opposing counsel or party does not specifically controvert…may also be deemed undisputed if supported by record evidence.**"); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact…is genuinely disputed must support the assertion by…citing to particular parts of the materials in the record"). Thus, the facts in the defendants' Statement of Material Facts are undisputed so long as they are supported by the cited exhibits.

On January 27, 2023, Keri Fitzpatrick, a therapist at FCCC, conducted a random safety and security walkthrough of the computer lab and saw Hall clicking through pictures of naked women. Fitzpatrick told Hall to take his

---

[1] Hall's denial of facts numbered 12-18 are inexplicable, as they also simply summarize his complaint and are undisputably true.

hand off the computer mouse and hand over the jump drive that was inserted in the computer, but Hall instead grabbed the jump drive and ran out of the lab. Fitzpatrick used her radio to alert security of the direction Hall was running. (Doc. 59-1 at 5). Captain Dakota Cardenas heard Fitzpatrick over the radio and found and restrained Hall. A CCTV camera caught Hall sliding an item under a door. Cardenas investigated and found a jump drive. A FCCC resident then reported to Cardenas that Hall dropped something into a cart after he unsuccessfully tried to put his mp3 player into the resident's pocket. Cardenas found an mp3 player in the cart, and he took both the jump drive and the mp3 player to the officer in charge. (*Id.* at 8). They were photographed, documented, and turned over to facility investigator Mark Snyder. (*Id.* at 10-11).

Hall was charged with disorderly conduct—which is considered a major rule violation—and placed on secure management status. (Doc. 59-3 at 3). He was moved to a room at 10:00 a.m. on January 27, 2023, and he remained in that room 23 hours a day until his secure-management status ended at 7:49 a.m. on January 30, 2023. Residents are normally limited to 72 hours on secure management, and they are provided hygiene items and their medications. (*Id.*).

Snyder found pornography on the jump drive and the mp3 player, and Hall was charged with possession of adult pornography on January 30, 2023.

3

(Doc. 59-2 at 5-6). Notice of Violation and Behavior Management forms were prepared for both charges, and both forms indicate that Hall refused to sign them. (Doc. 59-1 at 4; Doc. 59-2 at 4).

On February 8, 2024, the charges were presented to a three-person behavior management panel consisting of S. Williams, Robert Houston, and Cheryl Dicks. Hall responded to the disorderly conduct charge by stating, "I was in fear for my life. I thought there was going to be a confrontation." (Doc. 59-1 at 2). He defended against the possession of pornography charge by challenging the evidence, stating, "She didn't see that on the screen" and, "No jump drive was found on me." (Doc. 59-2 at 2). Hall did not complain about a lack of notice or any other procedural issues. (Doc. 59-6 at 3; Doc. 59-7 at 3).

The behavior management panel reviewed the disciplinary reports, witness statements, and Hall's statements. The panel found that the evidence supported both charges and placed Hall on wing restriction for 30 days. (Doc. 59-1 at 2; Doc. 59-2 at 2). Residents on wing restriction are not confined to a room. Rather, they must stay in a designated special management unit, where they are free to associate with the other residents in the unit. They can attend treatment and most religious services outside the unit but must be escorted by security staff. The special management unit has a legal computer and telephones for the residents' use, and they are allowed recreation time every day. The residents may not bring all their property with them to the special

management unit, but they may keep their legal materials, religious materials, medical devices, photographs, and other correspondence. The rest of their property is stored and returned to them when they return to open population. (Doc. 59-3 at 3-4).

On February 20, 2023, Hall was moved from special management to a step-down unit. Four days later, he returned to open population. (*Id.* at 5).

FCCC clinical director Courtney Jones explains the importance of adherence to the facility's rules. FCCC staff is charged with providing a safe environment for residents and staff while treating sexually violent predators so they can be released back into the community. The rules help ensure the safety of residents and staff. They are also an important aspect of the treatment process. Resistance to rules and supervision is a primary factor addressed in the treatment program. Attention to this factor is paramount in helping prepare residents for reintegration into society, where they will be expected to follow laws and rules. Jones believes Hall's rule violations jeopardized facility security and hinder the staff's ability to treat him for release back into the community. (Doc. 59-5 at 4-5).

## Legal Standard

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial

burden falls on the movant, who must identify the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences drawn from it in the light most favorable to the non-movant. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). But "[a] court need not permit a case to go to a jury…when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson Cty. Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996). If the moving party demonstrates entitlement to judgment as a matter of law, the non-moving party must establish each essential element to that party's case. *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (1994).

Hall files his Complaint under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under

6

color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

## Discussion

Hall's Complaint asserts four claims: (1) the defendants unlawfully punished him with an excessively long period of seclusion; (2) the defendants denied Hall due process by failing to provide him a copy of the disciplinary report and thereby denying him an opportunity to present witnesses or evidence in his defense; (3) the confiscation of Hall's jump drive and mp3 player violated his right to access the courts because they contained legal documents; and (4) Houston found the rule violations substantiated in retaliation for a lawsuit Hall filed against him.

**A. Excessive seclusion**

Involuntarily committed individuals retain "liberty interests in safety and freedom from bodily restraint." *Youngberg v. Romeo*, 457 U.S. 307, 319-20 (1982). These rights are not absolute, and they are sometimes in conflict. *Id. at 320*. Thus, "there are occasions in which it is necessary for the State to restrain the movement of residents—for example, to protect them as well as others from violence." *Id.* The Supreme Court has adopted a standard based

7

on professional judgment when evaluating the constitutionality of such restraints—"the Constitution only requires that the courts make certain that professional judgment was in fact exercised." *Id.* at 321. In determining whether the State has met its obligation to provide reasonably nonrestrictive confinement conditions, "decisions made by the appropriate professional are entitled to a presumption of correctness." *Id.* at 324.

Hall contends his three days in secure management and his 30 days on wing restriction violated the *Youngberg* standard. Hall's argument relies primarily on a Seventh Circuit case from 2003 and a Florida agency rule.

In *West v. Schwebke*, 333 F.3d 745 (7th Cir. 2003), civilly committed sexually violent predators sued state officials over their use of "therapeutic seclusion"—which involved confinement in a cell containing only a concrete platform, a toilet, and a sink and sometimes deprivation of clothing and other amenities—for periods ranging from 20 to 82 consecutive days. *West*, 333 F.3d at 747. The plaintiffs submitted affidavits from two psychiatrists who concluded that the duration of seclusion "was medically inappropriate and universally condemned by the psychiatric profession as a therapeutic tool." *Id.* The expert opinions created a genuine issue as to whether the "defendants kept plaintiffs in seclusion for periods far exceeding what could be justified by considerations of either security or treatment." *Id.* at 749. So the plaintiffs would be entitled to damages if they could prove the defendants' "use of

8

seclusion was designed to inflict extra punishment for the plaintiffs' sex crimes, rather than to treat their condition or protect others from new violence." *Id.* at 749.

*West* does not help Hall's case. To start, the conditions and duration of confinement are vastly different. Hall presents no evidence that any expert believes the conditions and duration of his confinement were medically inappropriate. Even if he did, that would not be enough. Under *Youngberg*, a decision made by a professional is presumptively valid, even if another expert disagrees. *See Youngberg,* 457 U.S. at 323. The plaintiffs in *West* survived summary judgment because they presented evidence that the psychiatric profession universally condemned the use of 20 or more days of seclusion as a therapeutic tool. That evidence allowed for the inference that seclusion was being used as a punishment for the plaintiffs' sex crimes. Hall does not claim the defendants placed him in confinement for three days and wing restriction for 30 days to punish him for prior crimes. Rather, it is unrefuted the restrictions were imposed because Hall broke FCCC rules.

The agency rule Hall cites is Department of Children and Families Operation Procedure (CFOP) 155-20. It "provides standards for the use of seclusion in state mental health treatment facilities" and "addresses the use of seclusion for behavior management purposes." (Doc. 59-9 at 2). Subsection (7)(b)(5) of CFOP 155-20 limits an initial order of seclusion to four hours and

9

allows that period to be extended up to 24 hours in four-hour increments. The restraint can continue beyond 24 hours only after assessment by a medical professional. (*Id.* at 8). These limitations are inapposite to this case. CFOP 155-20 only applies to the following FCCC residents:

> (1) Those residents housed on the Residential Mental Health Units;
>
> (2) Any resident evaluated by a psychiatrist as meeting criteria for Residential Mental Health by not yet housed on the unit; and,
>
> (3) Any resident who has been evaluated by a psychiatrist as being an imminent danger to self or others and the behavior is secondary to a mental health disorder/mental health crisis.

(*Id.* at 2). Hall did not fall into any of these categories, so CFOP 155-20 did not apply to him.

No reasonable jury could find in Hall's favor on this claim. The appropriate FCCC professionals made the decision to place Hall on secure management for three days and wing restriction for 30 days. Jones's unrefuted affidavit testimony explains why sanctioning rule violations is important for the security and therapeutic goals of the FCCC. Because the defendants exercised professional judgment, their decisions are presumptively correct. Hall has not shown he can overcome that presumption. The defendants are entitled to summary judgment on this claim.

### B. Procedural due process

The Due Process Clause of the Fourteenth Amendment prohibits a State from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "A procedural due process claim consists of two elements: (I) deprivation by state action of a protected interest in life, liberty, or property, and (II) inadequate state process." *Reed v. Goertz,* 598 U.S. 230, 236 (2023).

Hall argues the defendants violated his procedural due process rights by failing to give him advance written notice of the behavior management hearings. But the defendants established that both Notice of Violation and Behavior Management forms were served on Hall, and that Hall refused to sign them. While Hall rejects that fact in his response, he did not support his assertion with a citation to a particular part of the record as required by Rule 56(c)(1) and the Court's scheduling order. Hall effectively admitted to service of the notices by failing to refute it properly.

Even if Hall had established a genuine dispute to notice, his claim would have failed because no protected liberty interest was at stake. The result of the hearing was Hall's 30-day placement on wing restriction. While on wing restriction, Hall was free to associate with other residents in the unit, attend treatment and religious services, participate in recreation time, and use a legal computer and a telephone. "Disciplinary measures that do not substantially

11

worsen the conditions of confinement of a lawfully confined person are not actionable under the due process clause, *Sandin v. Conner*, 515 U.S. 472, 485-86 (1995), and this regardless of whether the confinement is criminal or civil." *Miller v. Dobier*, 634 F.3d 412, 415 (7th Cir. 2011). Hall fails to show that his 30 days on wing restriction substantially worsened the conditions of his confinement. Thus, the defendants did not deprive him of a protectable liberty interest. *See Woodson v. Whitehead*, 673 F. App'x 931, 933 (11th Cir. 2016) ("The Due Process Clause does not create an enforceable liberty interest in freedom from restrictive confinement while a prisoner is incarcerated.").[2]

Because Hall fails to prove a lack of notice or deprivation of a protectable liberty interest, the defendants are entitled to summary judgment on his procedural due process claim.

### C. Access to the courts

State officials may not obstruct a detainee's access to the courts. *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986). To state an access-to-the-courts claim, a detainee must show actual injury—*i.e.*, that the defendant's conduct "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). And "the injury requirement is not satisfied by just any type

---

[2] While Hall is not a prisoner and the FCCC is not a prison, relevant case law in the prison context "also serves to set forth the contours of the due process rights of the civilly committed." *Lavender v. Kearney*, 206 F. App'x 860, 863 (11th Cir. 2006) (quoting *Dolihite v. Maughon*, 74 F. 3d 1027, 1041 (11th Cir. 1996)).

of frustrated legal claim." *Id.* at 354. A plaintiff must show officials denied him the "opportunity to file nonfrivolous legal claims challenging [his] conviction[] or conditions of confinement." *Id.* at 356.

Hall argues the defendants violated his right to access the courts by confiscating his facility-provided jump drive and mp3 player because they contained legal materials in addition to the contraband pornography. But Hall fails to identify any claim—much less a meritorious claim—frustrated by the confiscation. Failure to establish an injury is fatal to this claim, and the defendants are entitled to summary judgment.

**D. Retaliation**

To succeed on a First Amendment retaliation claim, a plaintiff must establish that (1) "his speech or act was constitutionally protected," (2) "the defendant's retaliatory conduct adversely affected the protected speech," and (3) "there is a causal connection between the retaliatory actions and the adverse effect on speech." *Marsh v. Fla. Dep't of Corr.*, 330 F. App'x 179, 183 (11th Cir. 2009). "To establish causation, the plaintiff must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008)).

Hall claims Houston found the alleged rule infractions substantiated in retaliation for a prior lawsuit Hall filed against Houston. The only support

13

Hall provides for this claim is his unsupported claim that Houston made this statement during the hearing: "See you should not have filed that lawsuit against me because now, I got the upper hand to get you back for that." (Doc. 1 at 6). Of course, Houston denies this, as does fellow member of the behavior management panel Cheryl Dicks. In any event, the panel unanimously found the rule violations substantiated, and Hall does not allege any facts suggesting the other two members had any retaliatory intent.

The Eleventh Circuit has held that "a defendant may successfully defend a retaliatory discipline claim by showing some evidence the inmate actually committed a rule violation." O'Bryant v. Finch, 637 F.3d 1207, 1215 (11th Cir. 2011) (quoting Hartsfield v. Nichols, 511 F.3d 826, 829 (8th Cir. 2008)). There is evidence that Hall violated FCCC rules by possessing pornography and fleeing when caught with it. FCCC staff witnessed Hall flee, and an investigator found the pornography on Hall's devices. And while Hall is cagey about his guilt, he does not outright deny it. Nor does he present any evidence to refute it. Thus, there is no genuine dispute that the rule infractions were substantiated. No reasonable jury could find Houston liable for retaliation because he reached the correct conclusion.

Accordingly, it is

**ORDERED:**

Defendants' Motion for Summary Judgment (Doc. 59) is **GRANTED**. This action is **DISMISSED with prejudice**. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on April 4, 2025.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record